

FILED
2015 Jan-29  PM 01:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

| | | |
|---|---|---|
| MELISSA DIANNE BELK, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No.  6:13-cv-01669-HGD |
| | ) | |
| CAROLYN COLVIN, | ) | |
| COMMISSIONER, SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

This matter is before the undersigned U.S. Magistrate Judge based on the consent of the parties pursuant to 28 U.S.C. § 636(c).  Plaintiff, Melissa Diane Belk, filed for a period of disability and disability insurance benefits (DIB) and Supplemental Security Income (SSI) on July 7, 2010, alleging she became disabled on October 1, 2009.  (Tr. 117-30, 157).  Her application was denied.  Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  Following this hearing, the ALJ issued an unfavorable decision on November 30, 2011, finding plaintiff was not disabled. (Tr.13-21).  The Appeals Council denied review.  (Tr. 1-

5).  Consequently, the Commissioner's decision is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## I.     ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability. *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ first must determine the claimant's residual functional

capacity (RFC), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work, 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence in significant numbers of jobs in the national economy that the claimant can do given the RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(g) and 404.1560(c).

The ALJ found that plaintiff met the insured status requirements of the Social Security Act and that she had not engaged in gainful activity since October 1, 2009, the alleged onset date. According to the ALJ, plaintiff suffers from the following severe impairments: peripheral artery disease and a history of bifemoral artery bypass surgery. He further found that these impairments do not meet or medically equal the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ ultimately found, after consideration of the entire record, that plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).   She can lift and/or carry 20 pounds occasionally and ten pounds frequently.  She can stand and/or walk with normal breaks six hours out of an eight-hour workday, but no more than a few minutes at a time.  She can sit six hours out of an eight-hour workday.  She has no upper extremity limitations with gross or fine handling of objects.  She is limited to occasional use of foot controls, and she can occasionally climb stairs and ramps.  She should avoid extremes of heat or cold and she cannot work around dangerous machinery or at unprotected heights.  (Tr. 16).

## II.   Plaintiff's Argument for Reversal

Plaintiff asserts that the ALJ erred when he failed to give proper weight to the opinion of certified registered nurse practitioner (CRNP) Lou Ann Hubbard, whom plaintiff characterized as her "primary treating physician." (Doc. 13, Plaintiff's Brief, at 7-9).

## III.   Standard of Review

Judicial review is limited to whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*, 792 F.2d 129,

131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, re-evaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

## IV.  Discussion

In his decision, the ALJ provided a detailed review of plaintiff's medical history from 2002 through 2011.  (Tr. 17-19).  In pertinent part, he noted the following:

The claimant went to David H. Gilliland, M.D. beginning on October 1, 2009, and was evaluated for leg pain, from her hips to her feet. The impression was peripheral vascular disease. A CT angiogram was noted on October 6, 2009, as showing 75 percent narrowing of her distal aorta. She underwent aortobifemoral bypass surgery on December 1, 2009, and had a graft thrombectomy after surgery because the graft clotted off. At the time of discharge on December 6, 2009, she said she felt "great" and she was eating and ambulating. She was taking Coumadin when she returned to Dr. Gilliland for followup. Her foot pulses were good on December 22, 2009, and she was doing well on January 14, 2010. Her Coumadin doses were adjusted on February 9, February 16, and March 16, 2010. No problems were noted except for complaints of some leg pain on July 20, 2010. No carotid bruits were heard and she had palpable pulses in her feet. Dr. Gilliland repeatedly urged the claimant to stop smoking (Exhibits 3F and 4F). She testified at the hearing that she was still smoking but "trying to quit."

A consultative examination was performed on September 13, 2010, by Samia S. Mozuddin, M.D. The claimant said she had problems with her legs since undergoing bilateral femoral bypass surgery. She also said that she had abdominal pain since the surgery. She lived alone, but had frequent falls and needed help getting up and getting around the house. She said that she drove but needed help getting into and out of her car. Examination findings included diabetes mellitus, peripheral neuropathy, severe peripheral vascular disease, low back pain, bilateral foot pain and hyperlipidemia. (Exhibit 5F). On September 15, 2010, the state agency medical consultant noted that the claimant had undergone aortofemoral bypass and grafting, reclotting with further surgery, all performed in July 2010, and sensory changes consistent with sensory neuropathy of the lower extremities, and that the claimant favored her right leg. The findings were consistent with diabetic neuropathy. Light residual functional capacity was recommended with occasional crouching and safety precautions (Exhibit 6F).

Based on these guidelines, the state agency single decisionmaker made a "reasonable judgment" as to the claimant's residual functional capacity. He found the claimant capable of performing light exertional

work-related activities, occasionally lifting and/or carrying up to 20 pounds and frequently lifting and/or carrying ten pounds, both including upward pulling. She was believed capable of standing and/or walking about six hours in an eight-hour workday, and of sitting six hours in an eight-hour workday. She could occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. She could occasionally balance, stoop, kneel, crouch and crawl. She should avoid concentrated exposure to extreme cold, and she could not work at unprotected heights. (Exhibit 3A). While not the opinion of an acceptable medical source as defined in the regulations, it is well-reasoned and consistent with the opinion of the state agency medical consultant. The undersigned has thus considered it in assessing the claimant's limitations.

(Tr. 18).

The ALJ further noted that plaintiff was hospitalized from December 15 to December 16, 2010, for treatment for diabetes. It was also noted that plaintiff's blood sugar varied from a high of 285 on February 21, 2011, to a low of 118 on August 22, 2011. (Tr. 19). On that date, though she reported some neck pain and that she did not have much energy, she "appeared to be doing well (Exhibits 9F and 10F)." (Tr. 19).

With regard to CRNP Hubbard, the ALJ stated as follows:

Ms. Hubbard reported on October 13, 2011, that the claimant had been her patient for greater than ten years. She did not consider the claimant capable of an eight-hour workday. Her condition was expected to last 12 months or longer at the current level of severity; and she would be limited to less than sedentary work as a result of her condition. (Exhibit 8F). However, there was no function-by-function assessment of specific limitations, and the conclusive statement is not appropriate in that it gives a conclusion reserved to the Commissioner. It is no more than marginally consistent with the statements of treating and examining

physicians, although a certified nurse practitioner is an acceptable medical source defined in the Regulations.

(Tr. 19).  Based on this evidence, the ALJ arrived at the RFC stated above.  (Tr. 19).

Plaintiff's only challenge to the ALJ's decision is that he failed to give proper weight to the opinion of CRNP Hubbard.  Any other claims are waived. *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

Although characterized by plaintiff as a "primary treating physician," Hubbard is not an acceptable medical source under the Commissioner's guidelines.[1]  The regulations distinguish between opinions coming from "acceptable medical sources" and those from "other sources."    20 C.F.R. §§ 404.1513(a), (d)(1) and 416.913(a)(d)(1).  Acceptable medical sources include licensed physicians (medical and osteopathic doctors) and licensed or certified psychologists, while other sources can include public and private social welfare agencies, and observations by non-medical sources, and other practitioners, such as nurse practitioners. *See id.*  Thus, a CRNP is not an "acceptable medical source" as defined in the regulations.  Because CRNP Hubbard is not an "acceptable medical source," her opinion is not entitled to

---

[1]  Although the ALJ stated that a CRNP is an acceptable medical source, as noted above, this is incorrect.

any special weight or significance.  *See* 20 C.F.R. §§ 404.1513(a), (d)(1), 404.1527(a)(2), 416.913(a), (d)(1) and 416.927(a)(2); *Crawford v. Comm'r,* 363 F.3d 1155, 1160 (11th Cir. 2004).  Because nurse practitioners are not acceptable medical sources, their opinions are not "medical opinions" and "cannot establish the existence of an impairment," although their opinions may be used to show the severity of an impairment and how it affects a claimant's ability to work.  *Himes v. Comm'r of Soc. Sec.*, 585 Fed.Appx. 758, 762 (11th Cir. 2014).

Furthermore, the Commissioner's regulations provide that medical source opinions on some issues are reserved to the Commissioner.  "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."  20 C.F.R. § 1527(d)(1).  A Social Security Administration policy interpretation clarifies that since statements that an individual is disabled are "administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner.  Such opinions on these issues must not be disregarded.  However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance."  SSR 96-5p; *see also Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986).  The Commissioner will consider all statements made by treating physicians, but "will not give any special

significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(3).

CRNP Hubbard's submission to the ALJ was in the form of a letter written in May 2011, in which she stated that plaintiff was "unable to work and has to depend on others for financial aide [*sic*]." (Tr. 364). She further stated that plaintiff has "numerous severe health problems." (*Id.*). In October 2011, Hubbard completed a four-question, one-page questionnaire indicating that plaintiff could not sustain an eight-hour workday, that her condition was expected to last twelve months or longer at the current level of severity, and that her condition was such that she would be limited to less than sedentary work as a result of her condition. (Tr. 323). Ms. Hubbard did not explain the basis for her opinions, identify plaintiff's alleged conditions, or indicate any limitations resulting therefrom in either her May 2011 letter or the October 2011 questionnaire. (Tr. 323, 364).

Thus, the ALJ properly rejected Hubbard's opinion. As he noted, she made only conclusory statements concerning plaintiff regarding matters reserved to the Commissioner. Furthermore, she failed to include any assessment of plaintiff's functional limitations. While the Commissioner may use evidence from other sources concerning a claimant's impairment and how it affects a claimant's ability to work, Hubbard provided no useful information.

In addition, substantial weight supports the decision of the ALJ.  For instance, Dr. Samia S. Mozuddin, M.D., examined plaintiff in September 2010 and found that she was limited in squatting due to back and knee pain and stiffness, but she had normal muscle strength, symmetric, normal muscle tone, no atrophy or abnormal movements, and her heel and toe weight bearing was normal.  (Tr. 317).  Dr. Mozuddin further found that plaintiff had only mild favoring of her left leg.  These findings are inconsistent with Hubbard's claim that plaintiff was capable of only less-than-sedentary work.

Likewise, after Dr. David Gilliland, M.D., performed bifemoral artery bypass surgery on plaintiff in 2009, her condition greatly improved.  (Tr. 292-301).  Although plaintiff reported some leg pain in July 2010, she also stated that she felt "fine," and Dr. Gilliland noted that she was "doing well . . . with no problems."  (Tr. 301).  Dr. Gilliland's treatment notes also do not support Hubbard's conclusions.

Consequently, plaintiff has failed to meet her burden of proving that she has disabling limitations.  *See* 42 U.S.C. §§ 423(d)(5)(A) and 1382c(a)(3)(H)(i); 20 C.F.R. §§ 404.1512(a), (c), 404.1529(a), (c), 416.912(a)(c) and 416.929(a), (c); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  Substantial evidence supports the ALJ's decision and his conclusion that plaintiff is not disabled within the meaning of the Social Security Act.

## V.      Conclusion

The court concludes that the ALJ's determination that plaintiff is not disabled is supported by substantial evidence and that proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed.  A separate order will be entered.

DONE this 29th day of January, 2015.

_____
HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE